IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Timothy Leroy Wilson, | ) | C/A No.: 1:13-2223-JFA-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civ. Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be affirmed.

I.      Relevant Background

A.      Procedural History

On July 27, 2010, Plaintiff filed applications for DIB and SSI in which he alleged his disability began on July 10, 2010. Tr. at 117–20, 126–27. His applications were denied initially and upon reconsideration. Tr. at 59–63, 71–72. On March 6, 2012,

Plaintiff had a hearing before Administrative Law Judge ("ALJ") Marcus Christ. Tr. at 26–54 (Hr'g Tr.). The ALJ issued an unfavorable decision on March 30, 2012, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 10–23. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 1–6. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on August 15, 2013. [ECF No. 1].

      B.     Plaintiff's Background and Medical History

          1.     Background

Plaintiff was 29 years old at the time of the hearing. Tr. at 29. He completed two-and-a-half years of college. Tr. at 36. His past relevant work ("PRW") was as a bagger, a cashier, a ride attendant, a short-order cook, a houseman, a sandwich maker, an assistant manager, and a fast foods worker. Tr. at 47. He alleges he has been unable to work since July 10, 2010. Tr. at 26. Plaintiff requested a closed period of disability from July 2010 through December 2011 and asked that his work after January 2012 be considered a trial work period. Tr. at 26–27.

          2.     Medical History

              a.     Records Before the ALJ

Plaintiff was hospitalized June 8–26, 2007, at McLeod Regional Medical Center. Tr. at 421. Scott D. Cohen, M.D., stated that Plaintiff's history of Crohn's disease contributed to development of Fournier's gangrene of the scrotum and rectal abscesses.

*Id.* Plaintiff underwent debridement of the scrotum, skin graft, and ileostomy[1] to divert his bowels. Tr. at 429.

Plaintiff presented to Grand Strand Regional Medical Center on July 10, 2010, complaining of abdominal pain and swelling around his ileostomy. Tr. at 223. Plaintiff's serum albumin was 2.1 g/dL and his hemoglobin was 9.0 g/dL. Tr. at 224. An abdominal CT showed a large gas and fluid filled area adjacent to the right-sided ostomy that appeared to be an abscess and other inflammatory changes just below the rectus muscle that suggested a possible early fistula. Tr. at 225. Plaintiff was transferred to McLeod Regional Medical Center to receive a higher level of care. Tr. at 226.

Plaintiff was hospitalized at McLeod Regional Medical Center July 11–19, 2010, for treatment of peristomal abscess and enterocutaneous fistula. Tr. at 251. Upon admission, Plaintiff weighed 52.2 kg.[2] Tr. at 258. His serum albumin was 2.2 g/dL and his hemoglobin was 8.4 g/dL on July 12, 2010. Tr. at 248, 269. An IBD Serology 7 test

---

[1] According to the U.S. National Library of Medicine, a service of the National Institutes of Health, an ileostomy is a surgical opening in the abdominal wall, also known as an ostomy, with an attached pouch that is used to move waste out of the body when the colon or rectum is not working properly. An ileostomy may be used on a short-term or a long term basis. If an individual has at least part of his rectum, the ileostomy is created to allow the remaining part of the intestine to rest during the surgical recovery period. After the surgical recovery period, ileostomy may be reversed through another surgical procedure to reattach the ends of the small intestine. A.D.A.M. Medical Encyclopedia [Internet]. San Diego (CA): A.D.A.M., Inc.; ©1997–2014. *Ileostomy*; [updated 10 Dec. 2012; accessed 13 Nov. 2014]. Available from: http://www.nlm.nih.gov/medlineplus/ency/article/007378. htm. A court may take judicial notice of factual information located in postings on government websites. *See Phillips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) ("court may take judicial notice of matters of public record").

[2] A pound is equal to 0.45359237 kg, so Plaintiff weighed 115.08 pounds. "Pound." *Merriam-Webster.com.* 2014, *available at* http://www.merriam-webster.com/medical/pound?show=0&t=1415636821 (13 Nov. 2014).

showed results consistent with Crohn's disease. Tr. at 268. Plaintiff underwent a surgical procedure to drain and irrigate the abscess cavity. Tr. at 272–73.

On July 27, 2010, Plaintiff followed up with Mark A. Reynolds, M.D., who noted Plaintiff was feeling well and had a clean, granulating wound with little drainage. Tr. at 298.

On August 5, 2010, Plaintiff followed up with Dr. Reynolds. Tr. at 303. Dr. Reynolds observed a small amount of purulent material draining from Plaintiff's fistula, but his parastomal abscess wound was granulating well and there was no evidence of infection. *Id.*

On August 10, 2010, Plaintiff followed up with Dr. Reynolds. Tr. at 302. Plaintiff stated that his abscess cavity was not healing well and complained of a significant amount of purulent material draining from the area. *Id.* Dr. Reynolds observed a small amount of material draining from Plaintiff's enterocutaneous fistula. *Id.*

Plaintiff presented to John W. Gause, M.D., on August 24, 2010. Tr. at 301. He reported no pain, but constant drainage from the abscess site. *Id.* Plaintiff was noted to have an open wound where the enterocutaneous fistula was present. *Id.* He requested ileostomy takedown and was referred for colonoscopy to determine if he still had a stricture of the rectum. *Id.*

On August 31, 2010, Palmer Kirkpatrick, M.D., performed an enteroscopy and proctoscopy. Tr. at 305. Dr. Kirkpatrick removed a pseudopolyp from Plaintiff's ileum. *Id.* He noted slight inflammation in the ileum. *Id.* He observed several diverticula in Plaintiff's rectal stump, but there was no inflammation. *Id.*

Plaintiff followed up with Dr. Gause on September 7, 2010, and stated that he was doing better. Tr. at 300. Dr. Gause noted that he had referred Plaintiff for a colonoscopy, but that a barium enema was needed to obtain a better understanding of Plaintiff's colonic anatomy. *Id.* Dr. Gause noted that Plaintiff requested surgery to reverse his ileostomy, but that Plaintiff's prior stricture prevented surgery. *Id.*

A barium enema on September 13, 2010, showed no lesions or other abnormalities. Tr. at 304.

Plaintiff presented to Kingstree Family Medicine on September 15, 2010, to follow up on Crohn's disease and for evaluation of right flank pain. Tr. at 291. He weighed 112 pounds, and the record indicates that his weight was decreased by 28 pounds. *Id.* He complained of problems at the abscess site and requested a referral to a gastrointestinal doctor in Myrtle Beach. *Id.* Plaintiff had an ileostomy bag and a healing/granulating wound. *Id.*

On September 16, 2010, Plaintiff followed up with Dr. Gause for further evaluation and discussion of possible ileostomy takedown. Tr. at 297. Plaintiff acknowledged being noncompliant with medical therapy. *Id.* Barium enema revealed no strictures or evidence of involvement of the colon, and Plaintiff's fistula was well-controlled. *Id.* Dr. Gause indicated that Plaintiff was reluctant to undergo takedown of the ileostomy because he would have to be out of work for several weeks after surgery. *Id.* He was instructed to follow up in one month. *Id.* Plaintiff subsequently called Dr. Gause's office about scheduling surgery and was told that surgery would be scheduled at his next appointment. Tr. at 299.

Plaintiff presented to Conway Medical Center on October 13, 2010, complaining of swelling in his left knee. Tr. at 353. He was noted to be well-nourished and in no acute distress. Tr. at 363. He was diagnosed with knee effusion and arthralgia. Tr. at 357.

On October 24, 2010, Plaintiff presented to Conway Medical Center for pain and swelling in his left knee. Tr. at 346. He was described as well-developed and well-nourished. *Id.* A skin examination was negative for abscesses or cellulitis. Tr. at 348. Plaintiff weighed 111.99 pounds. *Id.* Plaintiff was diagnosed with a left knee effusion and discharged home with a prescription for Vicodin 5-500 mg and instructions to rest, ice, compress, and elevate ("RICE") his knee. Tr. at 349.

On October 28, 2010, state agency medical consultant Hugh Wilson, M.D., completed a physical residual functional capacity assessment in which he indicated Plaintiff had the following limitations: occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday; sit (with normal breaks) for a total of about six hours in an eight-hour workday; push and/or pull unlimited; frequently climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders/ropes/scaffolds; avoid all exposure to hazards (machinery, heights, etc.); and close access to bathroom. Tr. at 333–40.

Plaintiff presented to Nigel Taylor, M.D., at Black River Health Care on November 29, 2010, complaining of pain. Tr. at 368. His skin was noted to be mostly normal, and he had no oozing, increased warmth, or discharge from the abscess site. *Id.* Dr. Taylor noted Plaintiff's condition was stable and that he had no evidence of Crohn's

flare or current abscess. *Id.* Dr. Taylor indicated that Plaintiff planned to try again for disability so that he could obtain surgery to reverse his ileostomy. *Id.* He increased Plaintiff's Percocet dosage. *Id.* Plaintiff's serum albumin was 3.5 g/dL and his hemoglobin was 10.5 g/dL. Tr. at 377, 378.

Plaintiff followed up at Black River Health Care on December 13, 2010. Tr. at 367. He complained of pain in his right lower quadrant and drainage from beside the stoma of his ileostomy. *Id.* He stated that the problem was ongoing since his last visit, but had worsened that day. *Id.* Dr. Taylor assessed a likely recurrence of enterocutaneous fistula and iron-deficiency anemia. *Id.* Plaintiff's hemoglobin was 10.7 g/dL. Tr. at 369.

On December 14, 2010, Dr. Gause examined Plaintiff, who was not taking medication for his Crohn's and sought takedown for his ileostomy, which had already been scheduled at least once in the past. Tr. at 375. On examination, Dr. Gause observed Plaintiff's abdomen was soft and nontender and he had a fairly significant anal stricture. *Id.* Dr. Gause scheduled Plaintiff for an anoscopy and proctoscopy. *Id.*

Plaintiff also followed up with Dr. Reynolds on December 14, 2010. Tr. at 383. Dr. Reynolds noted Plaintiff's peristomal abscess had persisted as a fistula and that a recent CT scan demonstrated an extensive area of inflammatory changes in the right lower quadrant. *Id.* He stated that this area demonstrated no evidence of foreign body or residual drain, but did show a fistulous tract. *Id.* Dr. Reynolds indicated that Plaintiff was having difficulty affording treatment and maintaining employment because of his condition and that he was intermittently noncompliant with his medications. *Id.*

An anoscopy on December 22, 2010, revealed a very tight stricture. Tr. at 381. Proctoscopy was not performed because of the risk of perforation. *Id.* Dr. Gause indicated "[i]t is my opinion, at this time, that ileoscopy takedown is not a good option for this patient." *Id.*

Plaintiff followed up with Dr. Taylor on February 21, 2011, complaining of constant right abdominal pain that was an eight to ten. Tr. at 528. He weighed 119 pounds. *Id.* Dr. Taylor noted that the CT showed signs of wall thickening, but no definite fistula. *Id.* Plaintiff stated that he ran out of his prescription for Percocet three weeks earlier and that his pain was a lot better when he was taking Percocet. *Id.* Dr. Taylor noted some slight excoriation around the ileostomy site. *Id.* He refilled Plaintiff's prescription for Percocet and instructed him to follow up in two months. *Id.*

Plaintiff followed up with Dr. Taylor on March 2, 2011. Tr. at 529. He stated that he was doing well, but that he had experienced severe pain a few days before and was out of Percocet. *Id.* Dr. Taylor prescribed more Percocet. *Id.*

On March 8, 2011, state agency medical consultant William Cain, M.D., completed a physical residual functional capacity evaluation in which he indicated Plaintiff had the following limitations: occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday; sit (with normal breaks) for a total of about six hours in an eight-hour workday; push and/or pull unlimited; frequently balance; occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl; never climb

ladders/ropes/scaffolds; avoid all exposure to hazards; and close access to bathroom. Tr. at 481–88.

Plaintiff followed up with Dr. Taylor on March 21, 2011, indicating that he was going to a wound care clinic. Tr. at 530. He weighed 115 pounds. *Id.* He expressed frustration that many jobs would not allow him to work and care for his ileostomy site. *Id.* Dr. Taylor noted that Plaintiff's right lower quadrant ileostomy looked the best that it had looked since he was first seen in 2010. *Id.*

On April 28, 2011, Plaintiff again followed up with Dr. Taylor. Tr. at 531. He weighed 118 pounds. *Id.* Dr. Taylor noted that Plaintiff had periodic seepage from his wound site. *Id.* He stated Plaintiff was doing well with pain management. *Id.* Dr. Taylor indicated that the gastroenterologist was attempting to obtain Humira treatment for Plaintiff. *Id.* He observed that Plaintiff's ileostomy site appeared better than on the previous visit. *Id.*

On June 28, 2011, Dr. Taylor noted Plaintiff weighed 126 pounds and was prescribed Humira for treatment of Crohn's disease. Tr. at 532. *Id.* Plaintiff stated he felt better and Dr. Taylor noted that his ileostomy site looked better and that he was gaining weight. *Id.*

Plaintiff presented to Dr. Taylor's office on August 15, 2011, complaining of right-sided pain. Tr. at 533. Plaintiff weighed 130 pounds. *Id.* While the treatment notes are somewhat illegible, it appears that Dr. Taylor diagnosed Plaintiff with a superficial skin infection of the right lower quadrant and prescribed Bactrim. *Id.*

Plaintiff presented to the emergency department at Grand Strand Regional Medical Center on August 26, 2011, complaining of abdominal pain with nausea and vomiting. Tr. at 498. His hemoglobin was normal at 15.7 g/dL. Tr. at 507. His serum albumin was slightly low at 3.2 g/dL. *Id.* A CT scan of Plaintiff's abdomen and pelvis showed a nonspecific, nonobstructive bowel gas pattern, mild thickening of the remaining left colon wall, and no evidence of abscess. Tr. at 501. A physical examination of Plaintiff's abdomen indicated moderate tenderness in the right lower quadrant with no mass. Tr. at 508. However, an abscess was noted to the right of Plaintiff's ileostomy in his mid-lower abdomen. *Id.*

Plaintiff followed up with Dr. Taylor on September 21, 2011. Tr. at 534. He weighed 130 pounds. *Id.* He complained of abdominal pain at his ileostomy site. *Id.* Dr. Taylor refilled Plaintiff's prescription for Percocet. *Id.*

On October 19, 2011, Plaintiff complained of swelling in his left ankle. Tr. at 535. He weighed 126 pounds. *Id.* Dr. Taylor noted Plaintiff continued to experience pain at his ileostomy site that was treated with a prescription for Percocet. *Id.*

Plaintiff followed up with Dr. Taylor on November 21, 2011. Tr. at 536. Plaintiff weighed 132 pounds. *Id.* Although the treatment notes are generally illegible, it appears that Plaintiff was experiencing leakage around the stoma at his ileostomy site. *Id.*

On January 17, 2012, Plaintiff again followed up with Dr. Taylor regarding Crohn's disease. Tr. at 537. He weighed 128 pounds. *Id.* Treatment notes indicate the area near his ileostomy was healing. *Id.*

b.    Records Submitted to the Appeals Council

Plaintiff presented to the emergency department at Grand Strand Regional Medical Center on July 31, 2010, complaining of abdominal pain that started four days earlier. [ECF No. 21-1 at 3]. His abdomen was soft and tender in the right lower quadrant, just lateral to his iliostomy site. *Id.* at 2. CT scan indicated findings consistent with inflammatory bowel disease, but no evidence of abscess. *Id.* Plaintiff's serum albumin was 2.9 g/dL. *Id.*

Plaintiff again presented to Grand Strand Regional Medical Center on August 25, 2012, complaining of worsening abdominal pain. *Id.* at 8. His abdomen was soft and tender. *Id.* at 10. A CT scan indicated a possible fistula, but no abscess formation. *Id.* at 11. He started receiving parenteral nutrition through a peripheral line, and arrangements were made to transfer him to MUSC for treatment. *Id.* Plaintiff's hemoglobin was 13.8 g/dL and his serum albumin was 2.5 g/dL. *Id.* at 9, 10.

Plaintiff was hospitalized September 11–15, 2012, at MUSC for worsening pain accompanied by nausea and vomiting. *Id.* at 34. An MRI of Plaintiff's pelvis on September 11, 2012, indicated acute fistulizing Crohn's disease originating from the colonic resection margin at the hepatic flexure, extending into the upper pelvis and through the abdominal wall, with associated phlegmonous collection/developing abscesses. *Id.* at 38. He underwent surgery to place a 10-French APDL catheter within an abscess on his right flank. *Id.* at 37.

Plaintiff was hospitalized at Grand Strand Regional Medical Center September 18–26, 2012, with exacerbation of Crohn's disease and leakage of his drain. *Id.* at 18. He

was administered IV nutrition through a PICC line. *Id.* Plaintiff underwent surgery to replace the drain at his abscess site. *Id.* Plaintiff's serum albumin was 2.1g/dL and his hemoglobin was 14.1 g/dL on September 18, 2012. *Id.* at 20. His serum albumin was 2.1 g/dL on September 24, 2012. *Id.* at 24. Plaintiff weighed 47.62 kg[3] on September 19, 2012. *Id.* at 26.

C.    The Administrative Proceedings

1.    The Administrative Hearing

a.    Plaintiff's Testimony

At the hearing on March 6, 2012, Plaintiff testified he was married and that he and his wife lived in an apartment with his brother. Tr. at 29. He stated he was five feet, eight inches tall and weighed 125 pounds. Tr. at 30. Plaintiff indicated that his weight had fluctuated between 110 pounds and 150 pounds. *Id.*

Plaintiff testified he completed two-and-a-half years of college, but left college because of symptoms of Crohn's disease. Tr. at 36. Plaintiff testified he had worked in the past as a houseman and a cashier. Tr. at 40–41.

Plaintiff testified he had Crohn's disease and an ileostomy. Tr. at 33, 37. He indicated he developed an abscess beside his ileostomy that required surgery in July 2010. Tr. at 37. He testified the abscess had not completely healed and he still experienced drainage of his stomach contents through his abscess wound. *Id.* He indicated that he had an iron deficiency and difficulty gaining weight. Tr. at 43. He stated he experienced fatigue and swollen ankles and knees after being on his feet all day. Tr. at

---

[3] This is the equivalent of 104.98 pounds.

33. He indicated that he used an ACE bandage wrap to reduce swelling. *Id.* Plaintiff stated he missed work once every two weeks because of his symptoms. Tr. at 34.

Plaintiff denied being noncompliant with prescribed treatment. Tr. at 38. He stated that he had not undergone surgery to reverse his ileostomy because a colonoscopy revealed strictures in his intestines, which may necessitate another ileostomy surgery in the future. Tr. at 40.

Plaintiff testified he had been working since late-December or early-January as a grill cook at McDonald's, where he worked for 32 to 35 hours weekly. Tr. at 31–32. Plaintiff testified he lived within five minutes of his place of employment, which allowed him to eat lunch and rest at home during his lunch break. Tr. at 32. He also stated he could return home to change the dressing on his ileostomy and open abscess wound if needed. *Id.* He stated he took pain medication during work if needed. Tr. at 43. He testified that his employer allowed him to sit during slow periods and to go to the restroom as needed. Tr. at 44–45.

Plaintiff testified his doctors told him not to lift over 50 pounds. Tr. at 45.

b.    Vocational Expert Testimony

Vocational Expert ("VE") J. Adger Brown, Jr., reviewed the record and testified at the hearing. Tr. at 46–52. The VE categorized Plaintiff's PRW as a bagger, *Dictionary of Occupational Titles* ("*DOT*") number 920.687-014, as medium with a specific vocational preparation ("SVP") of two; a cashier, *DOT* number 211.462-010, as light with a SVP of two; a ride attendant, *DOT* number 342.677-010, as light with a SVP of two; a short-order cook, *DOT* number 313.374-014, as light with a SVP of three; a houseman, *DOT*

number 323.664-010, as medium with a SVP of three; a sandwich maker, *DOT* number 317.664-010, as medium with a SVP of two; an assistant manager, *DOT* number 187.167-106, as light with a SVP of three; and a fast foods worker, *DOT* number 311.472-010, which was light with a SVP of two. Tr. at 47. The ALJ described a hypothetical individual of Plaintiff's vocational profile who could perform medium work with no climbing of ladders, ropes, or scaffolds; could occasionally stoop, crouch, kneel, and crawl; should avoid concentrated exposure to moving machinery; and should avoid all exposure to unprotected heights. *Id.* The VE testified that the hypothetical individual could perform all of Plaintiff's past work except for his work as a ride attendant. Tr. at 47–48. The ALJ then asked the VE to assume a hypothetical individual of Plaintiff's vocational profile who could perform light work with the same postural and environmental limitations identified in the first hypothetical. Tr. at 48. The ALJ asked if this person would be able to do Plaintiff's PRW. *Id.* The VE stated that the individual could perform Plaintiff's PRW as a cashier, a short-order cook, and a manager at Subway. *Id.* The ALJ asked the VE if the hypothetical individual could perform Plaintiff's past work if he needed to be in close proximity to a bathroom. *Id.* The VE testified that Plaintiff's past work would allow some access to a restroom on a reasonable basis. *Id.* The ALJ asked if there would be jobs if the individual were to be off task for up to two hours daily in addition to regular breaks. *Id.* The VE testified that the individual would be unable to work. Tr. at 48–49. The ALJ asked if there would be jobs a person could perform if he were to miss two days of work per month, in addition to regular time

off. Tr. at 49. The VE testified that would be considered excessive because individuals are typically allowed a total of two days off per month. *Id.*

Plaintiff's attorney asked if it would be typical of an employer to have an area on the jobsite where an individual could rest and elevate his feet. Tr. at 51. The VE testified that it was not common for an employer to have a designated break area where it would be practical for an individual to lie down and prop up his feet. *Id.* Plaintiff's attorney asked if it would be typical for an employer to allow an individual to perform ileostomy care. *Id.* The VE stated that it would be a problem if the ileostomy care intruded dramatically into the work time. Tr. at 52.

>           2.    The ALJ's Findings

In his decision dated March 30, 2012, the ALJ made the following findings of fact and conclusions of law:

>    1.    The claimant meets the insured status requirements of the Social Security Act through March 31, 2015.
>    2.    The claimant has not engaged in substantial gainful activity since July 10, 2010, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).
>    3.    The claimant has the following severe impairment: Crohn's disease and ileostomy (20 CFR 404.1520(c) and 416.920(c)).
>    4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>    5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). Light exertional work is described by the Commissioner of the Social Security Administration as requiring lifting 20 pounds occasionally and 10 pounds frequently; stand/walk for 6 hours in an 8-hour workday; sit for 2 hours in an 8-hour workday. The claimant is limited to occasionally climbing stairs, stooping, crouching, kneeling and crawling. The claimant is further limited to no

climbing of ladders, ropes, and scaffolds. The claimant must avoid concentrated exposure to use of moving machinery and all exposure to unprotected heights.

6. The claimant is capable of performing past relevant work as a cashier, short order cook, and a managerial position at Subway. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from July 10, 2010, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

Tr. at 15–18.

### D.    Appeals Council Review

The Appeals Council denied Plaintiff's request for review in a notice dated June 20, 2013. Tr. at 1–6. It indicated that it considered the reasons that Plaintiff disagreed with the ALJ's decision and the additional evidence Plaintiff submitted. Tr. at 2. It determined that the new evidence was about a later time and that the information did not provide a basis for changing the ALJ's decision. *Id.*

## II.    Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1)    the ALJ erred in determining that Plaintiff's impairment did not meet or medically equal Listing 5.06; and

2)    the Appeals Council failed to consider new evidence.[4]

---

[4] Although Plaintiff alleges other errors in the complaint, he only briefed the arguments regarding Listing 5.06 and the Appeals Council's failure to consider new evidence. Therefore, it appears Plaintiff has abandoned the non-briefed allegations in his complaint. This court has previously held that the Magistrate Judge appropriately declined to address an issue that was not briefed. *See Hockman v. Astrue*, C/A No. 8:09-2073-JMC, 2011 WL 902432 (D.S.C. Mar. 15, 2011). Therefore, the undersigned limits analysis to the two briefed issues and whether substantial evidence supports the ALJ's decision.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

A.    Legal Framework

1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following:  (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[5] (4)

---

[5] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To

whether such impairment prevents claimant from performing PRW;[6] and (5) whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82-62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant

---

meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[6] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

2.      The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–

58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.    Analysis

1.    Listing 5.06

Plaintiff argues that the ALJ erred in determining that his impairment did not meet or equal Listing 5.06. [ECF No. 21 at 2]. Plaintiff contends that the ALJ ignored evidence in the record that suggested his impairment met the Listing. *Id* at 3.

The Commissioner argues that Plaintiff's Crohn's disease does not meet the criteria required under the Listing. [ECF No. 23 at 5]. The Commissioner maintains that Plaintiff's condition was not equivalent to Listing 5.06. *Id.* at 6.

At step three of the sequential evaluation, the Commissioner must determine whether the claimant has an impairment that meets or equals the requirements of one of the impairments listed in the regulations and is therefore presumptively disabled. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis added). It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also meet the criteria found in the Listing of that impairment. 20 C.F.R. § 404.1525(d). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. 20 C.F.R. § 404.1508.

The Commissioner can also determine that the claimant's impairments are medically equivalent to a Listing, which occurs when an impairment is at least equal in severity and duration to the criteria of a Listing. 20 C.F.R. § 404.1526(a). There are three ways to establish medical equivalence: (1) if the claimant has an impairment found in the Listings, but does not exhibit one or more of the findings specified in the particular Listing or one of the findings is not as severe as specified in the particular Listing, then equivalence will be found if the claimant has other findings related to the listed impairment that are at least of equal medical significance to the required criteria; (2) if the claimant has an impairment not described in the Listings, but the findings related to the impairment are at least of equal medical significance to those of a particular Listing; or (3) if the claimant has a combination of impairments and no singular impairment meets a particular Listing, but the findings related to the impairments are at least of equal medical significance to those of a Listing. 20 C.F.R. § 404.1526(b).

Listing 5.06 requires a diagnosis of inflammatory bowel disease[7] documented by endoscopy, biopsy, appropriate medically acceptable imaging, or operative findings and either:

> A. Obstruction of stenotic areas (not adhesions) in the small intestine or colon with proximal dilation, confirmed by appropriate medically acceptable imaging or in surgery, requiring hospitalization for intestinal decompression or for surgery, and occurring on at least two occasions at least 60 days apart within a consecutive 6-month period; or

---

[7] According to the Centers for Disease Control and Prevention, the term "inflammatory bowel disease" describes conditions, including ulcerative colitis and Crohn's disease, that involve chronic or recurring immune response and inflammation of the gastrointestinal tract. *Inflammatory Bowel Disease*, Centers for Disease Control and Prevention; [updated 4 Sept. 2014; accessed 6 Nov. 2014]. Available from: http://www.cdc.gov/ibd/.

B. Two of the following despite continuing treatment as prescribed and occurring within the same consecutive 6-month period:

1. Anemia with hemoglobin of less than 10.0g/dL, present on at least two evaluations at least 60 days apart; or

2. Serum albumin of 3.0 g/dL or less, present on at least two evaluations at least 60 days apart; or

3. Clinically documented tender abdominal mass palpable on physical examination with abdominal pain or cramping that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or

4. Perineal disease with a draining abscess or fistula, with pain that is not completely controlled with prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or

5. Involuntary weight loss of at least 10 percent from baseline, as computed in pounds, kilograms, or BMI, present on at least two evaluations at least 60 days apart; or

6. Need for supplemental daily enteral nutrition via a gastrostomy or daily parenteral nutrition via a central venous catheter.

20 C.F.R., Pt. 404, Subpt. P, Appx. 1, § 5.06.

The ALJ stated the following:

I have considered whether the claimant's Crohn's disease and ileostomy meets Listing 5.06, however, the medical evidence of record fails to document by endoscopy, biopsy, appropriate medically acceptable imaging, or operative findings with an obstruction of stenotic areas (not adhesions) in the small intestine or colon with proximal dilation, confirmed by appropriate medically acceptable imaging or in surgery, requiring hospitalization for decompression or for surgery, and occurring on at least two occasions at least 60 days apart within a consecutive 6-month period or two of the following despite continuing treatment as prescribed and occurring within the same consecutive 6-month period: anemia with hemoglobin of less than 10.0 g/dL, present on at least two evaluations at least 60 days apart; or serum albumin of 3.0 g/dL of less, present on at least two evaluations at least 60 days apart; or clinically documented tender

abdominal mass palpable on physical examination with abdominal pain or cramping that it not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or perineal disease with a draining abscess or fistula, with pain that is not completely controlled by prescribed medication, present on at least two evaluations at least 60 days apart; or involuntary weight loss of at least 10 percent from baseline, as computed in pounds, kilograms, or BMI, present on at least two evaluations at least 60 days apart; or a need for supplemental daily enteral nutrition via a gastrostomy or daily parenteral nutrition via a central venous catheter.

Tr. at 16.

The undersigned recommends a finding that the ALJ correctly concluded that Plaintiff's impairment did not meet Listing 5.06 because he did not meet all of the specified medical criteria. Plaintiff was diagnosed with Crohn's disease, a specific type of inflammatory bowel disease, and his diagnosis was confirmed by CT scan. *See* Tr. at 383. Plaintiff's impairment did not meet part A of Listing 5.06 because he did not require hospitalization for intestinal decompression or surgery on at least two occasions at least 60 days apart and within a consecutive six-month period. Plaintiff's impairment also failed to meet part B of Listing 5.06 because he did not meet two of the specific criteria set forth in the Listing within the same consecutive six-month period.

Although Plaintiff was diagnosed with anemia, his hemoglobin was only assessed below 10.0 g/dL when he was hospitalized in July 2010, which fails to meet the requirement under Listing 5.06(B)(1) for anemia with hemoglobin of less than 10.0 g/dL present on at least two occasions at least 60 days apart during the six-month period. *See* Tr. at 224 (9.0 g/dL on July 10, 2010), 248 (8.4 g/dL on July 12, 2010), 378 (10.5 g/dL

on November 29, 2010), 369 (10.7 g/dL on December 13, 2010), 507 (15.7 g/dL on August 26, 2011).

Plaintiff also did not have serum albumin of 3.0 g/dL or less on two evaluations at least 60 days apart during a six-month period. In fact, his serum albumin was only below 3.0 g/dL during his period of hospitalization in July 2010. *See* Tr. at 224 (2.1 g/dL on July 10, 2010), 269 (2.2 g/dL on July 12, 2010), 377 (3.5 on November 29, 2010), 507 (3.2 g/dL on August 26, 2011).

The record does not indicate Plaintiff had a tender abdominal mass present on at least two evaluations at least 60 days apart during a six-month period. A tender abdominal mass was only observed during his period of hospitalization in July 2010. *See* Tr. at 259 (epigastric tenderness and palpable mass on July 11, 2010), 301 (abdomen soft and nontender on August 24, 2010), 363 (abdomen soft and non-tender with no masses noted on October 13, 2010), 375 (abdomen soft and nontender on December 14, 2010), 508 (moderate abdominal tenderness, but no mass on August 26, 2011).

The record does not support a finding that Plaintiff had perineal disease with a draining abscess or fistula and pain that was not completely controlled by prescribed narcotic medication on at least two evaluations at least 60 days apart during a six-month period. Although Plaintiff complained of drainage at times, he generally did not complain of drainage in combination with uncontrolled pain while taking his medications as prescribed. *See* Tr. at 298 (feeling well, granulating wound on July 27, 2010), 303 (small amount of drainage from fistula, but no mention of pain on August 5, 2010), 302 (complaint of drainage and wound not healing well, but no mention of pain on August 10,

2010), 301 (reported no pain, but constant drainage on August 24, 2010), 300 (reported doing better on September 7, 2010), 291 (problems with wound, but no complaints of pain on September 15, 2010), 297 (fistula well-healed on September 16, 2010), 368 (skin mostly normal with no oozing, increased warmth, or discharge on November 29, 2010), 367 (drainage and pain in right lower quadrant on December 13, 2010), 528 (complaint of constant right abdominal pain, but out of Percocet and pain improved when taking medication on February 21, 2011), 529 (pain improved, but had been worse; out of Percocet on March 2, 2011), 531 (periodic seepage from ileostomy site, but doing well with pain management on April 28, 2011), 532 (reported feeling better and ileostomy site looked better on June 28, 2011), 536 (drainage around stoma on November 21, 2011).

The undersigned's review of the record indicates that Plaintiff's impairment did not meet the criteria under part (B)(5) of Listing 5.06 because Plaintiff did not have involuntary weight loss of at least 10 percent from baseline present on at least two evaluations at least 60 days apart. Although Plaintiff correctly argues that a treatment note dated September 15, 2010, states that his weight had decreased by 28 pounds, a weight of 143 pounds[8] was not recorded in the treatment notes during a relevant six-month period. The record reflects that Plaintiff's weight was approximately 115 pounds when he was hospitalized in July 2010, that his lowest recorded weight was 111.99 pounds, that he reached a maximum weight of 132 pounds after being prescribed Humira, and that his weight dropped to 128 pounds. *See* Tr. at 258 (115 pounds on 7/11/10), 291

---

[8] This weight was calculated by adding 28 pounds to Plaintiff's weight of 115 pounds recorded at the office visit on September 15, 2010.

(112 pounds on 9/15/10), 348 (111.99 pounds on October 24, 2010), 528 (119 pounds on February 21, 2011), 530 (115 pounds on March 21, 2011), 531 (118 pounds on April 28, 2011), 532 (126 pounds on June 28, 2011), 533 (130 pounds on August 15, 2011),  534 (130 pounds on September 21, 2011), 535 (126 pounds on October 19, 2011), 536 (132 pounds on November 21, 2011), 537 (128 pounds on January 17, 2012). While it is impossible to establish a baseline weight for Plaintiff during the relevant period, the record does not show involuntary weight loss of 10 percent or more from any recorded weight during any six-month period contained in the record.

Finally, Plaintiff's impairment does not meet part (B)(6) of Listing 5.06 because he did not require supplemental daily enteral nutrition via a gastrostomy or daily parenteral nutrition via a central venous catheter.

The undersigned further recommends a finding that Plaintiff's impairments are not medically equivalent to a Listing because they are not equal in severity and duration to the criteria of Listing 5.06. Because Plaintiff was diagnosed with inflammatory bowel disease, an impairment found in the Listings, the undersigned has considered whether Plaintiff has other findings related to the listed impairment that are at least of equal medical significance to the required criteria and whether findings related to his combination of Crohn's disease and ileostomy are at least of equal medical significance to the criteria set forth in Listing 5.06. The undersigned concludes that Plaintiff's impairments meet neither of the criteria for a finding of medical equivalence.

Although Plaintiff had ongoing problems as a result of Crohn's disease and ileostomy, the record does not establish that these problems were severe enough to

prevent him from engaging in all types of work over a period of twelve months or more. Plaintiff developed a peristomal abscess and enterocutaneous fistula in July 2010 and was hospitalized for nine days. Tr. at 223, 251. However, notes from Plaintiff's follow up visits indicate the abscess healed well and that he experienced minimal drainage. *See* Tr. at 291, 298, 301, 302, 303, 348, 530, 531. By November 29, 2010, Dr. Taylor indicated that Plaintiff's condition was stable and that he had no evidence of Crohn's flare or current abscess. Tr. at 368. Plaintiff initially indicated that he was doing well and denied pain at the site, but later indicated that he was experiencing pain. *See* Tr. at 298, 300, 301, 367, 368. However, the record reflects that Plaintiff generally complained of pain when he ran out of pain medication and that his pain was controlled Percocet. *See* Tr. at 368, 528, 529, 530, 531, 532, 534. Although Plaintiff developed another abscess in August 2011, the initial abscess had healed nearly nine months earlier. *See* Tr. at 368, 508. Plaintiff reported doing well in the interim. *See* Tr. at 529, 530, 531, 532. Although treatment notes after August 2011 indicate some problems with pain and drainage, the pain was presumably controlled by Percocet and the problems were not significant enough to prevent Plaintiff from obtaining employment in late-December 2011 or early-January 2012. *See* Tr. at 31–32, 535, 536, 537. Although Plaintiff testified that he was able to work because he was able to return home to care for his ileostomy site, eat, and rest during his lunch period and because his employer allowed him to sit during slow periods and to go to the restroom as needed, he did not indicate that he would have been incapable of working with similar concessions prior to December 2011. *See* Tr. at 31–32, 45. While the undersigned recognizes that the work Plaintiff was performing at the time

of the hearing was not considered SGA, the undersigned also notes that Plaintiff failed to indicate that he was incapable of performing the job at the SGA level. In light of this evidence, the undersigned recommends a finding that the ALJ did not err in finding that Plaintiff's impairment or combination of impairments did not meet or equal Listing 5.06.

2.      Evidence Submitted to Appeals Council

Plaintiff argues that the records submitted to the Appeals Council indicated he was disabled and that the Appeals Council erred in failing to remand the claim to the ALJ. [ECF No. 21 at 6].

The Commissioner argues that the evidence Plaintiff submitted to the Appeals Council does not pertain to the relevant period. [ECF No. 23 at 7]. The Commissioner further argues that the new evidence did not indicate Plaintiff's impairment met or equaled Listing 5.06. *Id.*

The regulations "specifically permit claimants to submit additional evidence, not before the ALJ, when requesting review by the Appeals Council." *Meyer v. Astrue*, 662 F.3d 700, 705 (4th Cir. 2011). "If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b). "Evidence is new 'if it is not duplicative or cumulative' and is material if there is 'a reasonable possibility that the new evidence would have changed the outcome.'" *Meyer*, 662 F.3d at 705, *citing Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991). If the new and material evidence relates to the period on or before the

date of the ALJ's hearing decision, the Appeals Council should evaluate it as part of the entire record. 20 C.F.R. § 970(b).

The Fourth Circuit's decision in *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340–41 (4th Cir. 2012), suggests that evidence created after the ALJ's decision may be considered as new and material evidence and given retrospective consideration under certain circumstances. While *Bird* specifically addressed evidence created after a claimant's date last insured, this court has suggested its holding extends to situations in which evidence arises after the date of an ALJ's decision, but before the Appeals Council makes a decision to grant or deny review. *See Dickerson v. Colvin*, C/A No. 5:12-CV-33-DCN, 2013 WL 4434381, at *14 (D.S.C. Aug. 14, 2013) (holding that a medical opinion dated more than a year after the ALJ's decision was new and material evidence that warranted remand); *see also Evans v. Colvin*, C/A No. 8:13-CV-1325-DCN, 2014 WL 4955173, at *28 (D.S.C. Sept. 29, 2014) (holding that new evidence did not require reconsideration of the ALJ's decision because the new evidence did not appear to have any bearing upon whether the plaintiff was disabled during the time period relevant to the ALJ's decision).

The undersigned recommends a finding that the evidence submitted to the Appeals Council was not new and material evidence because it did not pertain to the period before the date of the ALJ's decision. The ALJ's decision was issued on March 30, 2012. Tr. at 10. The most recent evidence in the record before the ALJ was a treatment note dated January 17, 2012. *See* Tr. at 537. The earliest record in the evidence submitted to the Appeals Council was dated July 31, 2012, and the latest record was dated September 26,

2012. [ECF No. 21-1]. The record reflects no treatment in the two months preceding the ALJ's decision and no treatment in the four months following his decision. The July 31, 2010, record indicates that Plaintiff began experiencing abdominal pain four days earlier. *Id.* at 2–3. Plaintiff testified that he was working 32 to 35 hours weekly. Tr. at 31–32. Although his earnings did not meet the threshold amount to be considered SGA, he was working very close to full time hours during the seven months before he presented to the emergency room in July 2012.

Additionally, even if the evidence submitted to the Appeals Council were considered as part of the record, Plaintiff cannot show that he met part A or two of the criteria in part B of Listing 5.06 at least 60 days apart and within the same consecutive six-month period. First, more than six months elapsed between the date of the last treatment note submitted to the ALJ (January 17, 2012) and the date of the earliest treatment note submitted to the Appeals Council (July 31, 2012). Therefore, even if the evidence in those two records suggested that Plaintiff's impairment met the criteria under Listing 5.06, he could not satisfy the requirement that the symptoms occur within the same six-month period. Next, the records submitted to the Appeals Council are for the period from July 31, 2012, through September 26, 2012, which is a period of less than 60 days. Although these records show that Plaintiff had symptoms specified in part B of Listing 5.06, they do not reflect that his symptoms were present at least 60 days apart. Finally, even if he were to satisfy the criteria under part B of Listing 5.06, it would have been so long after the date of the ALJ's decision that it could not be considered to relate to the period on or before the date of the ALJ's hearing decision.

3.    Substantial Evidence

"In evaluating whether or not the ALJ's ultimate conclusion is supported by substantial evidence, this court can do no more than require that the ALJ carefully consider the evidence, make reasonable and supportable choices and explain his conclusions." *McCall v. Apfel*, 27 F. Supp. 2d 723, 731 (S.D.W.Va. 1999). "[T]he Commissioner, not the court, is charged with resolving conflicts in the evidence." *Belcher v. Apfel*, 56 F. Supp. 2d 662, 665 (S.D.W.Va. 1999). However, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Id. citing Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

The undersigned has scrutinized the record as a whole and concludes that the ALJ considered the evidence, made a supportable choice in determining Plaintiff was not under a disability, and adequately explained his decision. Although the record supports a conclusion that Plaintiff had severe impairments of Crohn's disease and ileostomy and that his impairments significantly limited his ability to perform some job duties, the record does not show that Plaintiff's impairments irrefutably rendered him disabled, as defined in the Social Security Act. The undersigned recommends a finding that the ALJ reached a rational conclusion that was supported by substantial evidence in the case record.

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the Commissioner, but to determine whether her decision is supported as a matter of fact and

law. Based on the foregoing, the undersigned recommends the Commissioner's decision be affirmed.

      IT IS SO RECOMMENDED.

November 13, 2014                Shiva V. Hodges
Columbia, South Carolina       United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).